The 4th District Appellate Court of the State of Illinois has now convened. The Honorable Robert J. Steigman presiding. Thank you, Mr. Bailiff. Our first case this afternoon is Christopher D. Leone, if that's pronounced correctly, versus the Illinois Department of Financial & Professional Regulation, which is case number 4-22-753. I'd like to have counsel for the appellant. Please state your name for the record. I'm Assistant Attorney General Caleb Rush, representing the appellants. Thank you. And counsel for the appellee, please state your name for the record as well, sir. Michael Goldberg. Thank you, counsel. Okay, Mr. Rush, at this time you may proceed with your argument on behalf of the appellant. May it please the court. I'm Assistant Attorney General Caleb Rush, representing defendants, appellants, Illinois Department of Professional, excuse me, of Financial & Professional Regulation, Division of Professional Regulation, and its director. Leone sent over 1,000 false chiropractic bills across a period of at least five years, and he submitted false information on his license renewal application. Accordingly, the director suspended his license for a minimum of two years. Leone? Can I just jump in on that second point? I'm sorry to interrupt you so early, but he didn't tell you about a case that was already the subject of these proceedings. I mean, isn't that patently a misstep, not an attempt to deceive? I mean, it would have been one of the most foolhardy attempts to deceive if that's what it was. That's what Leone argues in his brief to this court. What do you say? But Leone's argument entirely fails to address how the ALJ specifically discussed this, and that's at page 1342 of the record. And what the ALJ explained is there are separate arms in the department. There's a prosecution arm, and there's a licensing arm, and the only reason for Leone to omit this information was on the hope that the licensing arm was not aware of what was happening in the prosecution arm. I might add that the licensing arm deals with thousands and thousands of applications and has a very large burden in going through these applications with very little time to review each one. That's why the department relies on honesty from doctors submitting these applications, and that's why it's in the statute that doctors must be honest in their licensing documents. At the end of the day, this is a question of the weight of the evidence and a question of a credibility determination, and the evidence is not to be reweighed. Did the ALJ ever find that this was an attempt to deceive? Apart from the importance to the department of having that information in both pockets, so to speak, did the ALJ ever find that he intended to deceive? I don't recall the specific language of the factual findings, but the ALJ certainly found that this was a false statement and rejected Leone's, specifically rejected Leone's excuse for making the false statement. As I'm sure the court is aware, factual findings can be explicit and implicit. The ALJ's very specific statements clearly show a finding of rejecting the idea that this was innocent. Counsel, I want to make sure my understanding of what occurred in this case is correct. The trial court initially reversed the administrative decision finding that expert testimony was required to establish the department's allegation in the administrative complaint. Is that correct? Yes, Your Honor. Okay. And court made other findings and sent the matter back for further proceedings before the agency. And is my understanding correct that following the court's order, the director issued an order stating, I disagree with the ruling and commenting about other aspects of it and why he disagreed with it. Is that right? That's correct, Your Honor. We don't, we don't disagree that that was a mistake. That order was issued. Counsel, I've been at this a long time. You probably have done it a long time too. You recall any response like that from the head of the administrative agency with regard to a court order? No, I don't. And I won't attempt to justify it. What I will say is that that's not before the court now because the department did recognize its error again by a former director, stipulate to correcting it, and then proceeded on remand. Well, I suppose my question is, does this incident betray an animus on behalf of the department towards this particular doctor that might be something which would inappropriately cause the sanction to be harsher than it would otherwise? I don't think that the inappropriate initial order by the former director does betray any kind of animus specifically about Leone. Instead, it appears, and again, this was, this has not been argued by Leone or his counsel. But my reading of the order is that it appears to be on a disagreement regarding the law, regarding expert witnesses. Well, when push comes to shove on that, whose word matters? Of course, the department is required to obey the remand of the circuit court. There's absolutely no question about that. So that initial order was in error. The department recognized that, stipulated to correct it, and then proceeded properly on remand. Right, but it's such an outstanding error, as Justice Steigman mentioned. It's such a striking error. What else does it tell us about, for instance, the choice of the discipline? I don't think it tells us anything about the choice of the discipline, because that initial order was not issued by the ALJ, not issued by the director who issued the final administrative decision here, and not issued by the board that also endorsed the discipline. So, when we talk about choice of discipline, we're talking about a set of figures that go through a procedure, ALJ, then board, then director, none of whom issued that initial erroneous order. And I know that there's a degree of discretion vested in the director when it comes to the sanction for what has been found to be a violation. I also know that, like in any other case, there may be compromise positions that don't necessarily foreclose a tougher line down the road. But I will know that early on, there was a willingness to accept a 90-day suspension. And certainly, we all understand what the trial tax is, right? That somebody who doesn't accept a bargain can't expect the benefit of it. It is a little striking that that ended up at two years. If the department at one point thought that 90 days would vindicate the importance of these issues, should we not be a little concerned about the fact that 90 days turned into two years? Your Honor, I don't think so. I do believe I understand your point. But I think that it's worth considering that the trial tax comes on both sides. Because this was after the circuit court directed the department to go to the trouble of bringing in an expert to testify. And I will say erroneously, and that's part of what we're here to argue. Do you think that's an appropriate factor in the discipline for the conduct? No, not at all. What I'm saying is that it factors into understanding why the department was, initially after the remand, willing to consider a significant compromise in the discipline. But every step along the way, the discipline is supported by the record, suits the purpose of the statute, and is not an abuse of discretion, which this court reviews for. Instead of reviewing against potential compromises, the relevant comparisons would be with other litigated cases involving financial or license misconduct, such as the Abrahamson case affirming the denial of a medical license based on a false license application, the Danagelis application affirming a five-year minimum revocation based on all kinds of false billing, the Maughan case, MAUN affirming an 18-month minimum suspension for a plastic surgeon with no prior violations and only one count of violating the act, unlike Leone's six counts, I believe. He only overbilled five patients. Here we have over 1,000 false bills, and it was a period of 20 months, not five or more years in this case. We've also got the Naukoka case, a 2018 case from the First District affirming a three-year minimum suspension where there were Medicare kickbacks unclear in the amount somewhere between $7,000 and $80,000. No prior discipline, a higher suspension than in this case. Also, the ALJ recommended a two-year suspension here, specifically intentionally less than the three-year criminal probation period for Leone. So those are the reference points that show that the two-year discipline here is not an abuse of discretion. I was going to say, it's not a definitive term that automatically results in the restoration of his license at the conclusion of the two years. That's right, isn't it? That's exactly correct, and that's in accordance with the Sharma and Massoud decisions. And also, very specifically, following the language of the act, which says that after a term of suspension, that the department may restore a license. If a definite automatic restoration was always required, then that portion of the statute would be rendered meaningless. And certainly in this suspension, it can't be based on any misconduct in chiropractic care that it would be denied. What would be the reasons that an application might be denied after serving a two-year suspension? In a case like this, if there's no further misconduct... Well, there can't be misconduct in chiropractic care unless he practices without a license, right? Well, that's right. And I'm sorry, I don't have all of the factors in front of me. But what we're talking about here is in 68 Illinois Administrative Code, Section 1285.255, which lists 15 factors. Not exclusive, but 15 factors. And for what it's worth, my understanding from the department is that in a case like this, it would actually be difficult for the license not to be quickly reinstated after the expiration of the two-year term and the application by Leone to have his license restored. Counselor, I want to go back to my earlier question about the, in my judgment, unprecedented and remarkable behavior of the director. Yes, Your Honor. Disagreeing with the trial court's order and talking about how it was wrong, etc. Yes. You indicated that you, or the Attorney General's office, I guess, at some point disagreed with that. Or at what point did you take any action to say, you know, that's wrong and we disagree with it? Well, I'm sorry, Your Honor, I wasn't involved in those circuit court proceedings. But this office, you know, certainly does not recommend that any administrative agency ever disobey a circuit court order. I've never heard of any such thing. I can't imagine what that circumstance would be. Well, let me put it this way, to be more direct. It's such an unprecedented thing to do. And so wrong, and contrary to settled law, that it seems to me at some later time, when all the smoke settles, that the department is going to be imposing sanctions in this case. The director or the agency as a whole should say something along the lines of, by the way, we recognize the impropriety and the error of the prior director saying what he said. And we want the record to be clear that an imposition of a sanction in this case, that's not a continuation of this animus or bad judgment with regard to Dr. Leone. And we're setting all that aside and acknowledging its presence. Wouldn't that have been a good thing to say, given just how violative of law and practice the director's comments were? I certainly won't disagree that that would have been a good thing to say. But I also have to add that the former director's error, and I fully agree with your Honor's description of it, the former director's error does not indicate personal animus towards Leone. And in particular, I'll emphasize that. It just indicates he's stupid and doesn't like these rulings. That's okay? No, it's certainly not okay. But it doesn't indicate personal animus against Leone. And the discipline recommended has been consistent throughout in the first administrative proceedings, before the initial circuit court proceedings, and then after the circuit court proceedings on remand. We've been through at least three, maybe even four directors in the course of this. But the department promptly recognized its error and stipulated to correct it. Well, the reason I ask this is, as Justice Dougherty was inquiring, the sanction in this case appears to be pretty substantial and pretty severe. And as we're evaluating the reasonableness of all this, should we pay any attention at all to the unprincipled and lawful behavior exhibited by the director initially with regard to the same case? No, I don't believe so. The former director's erroneous order, nothing in the record suggests that it was related to the recommended discipline, which has been the same all along through every other director, through the board, through the ALJ. And I would also add that Leone's counsel has never suggested this point. And I would also dispute that the level of discipline is especially substantial relative to the findings of misconduct. Rather, they're in line with comparable cases, as I laid out. And I'd like to address those factual findings as the first of three basic topics today. The department's factual findings, which are reviewed against the manifest weight of the evidence, which means that they are prima facie deemed correct, that they must be upheld if they are supported by any competent evidence. And it also means that on review in a court, credibility determinations are not reweighed and the evidence is not reweighed. And since Leone himself admitted to sending over a thousand false bills across a period of five plus years, there's no basis for reversing those factual findings. The second topic, and I'll address that a little bit more in a moment, but just to lay out for the court, the second topic that I'd like to address is then the determination that Leone violated the act that's reviewed for clear error because it's applying factual findings under legal standards. And certainly no expert was needed to know that false billing is unethical and unprofessional. Can I ask you, counsel, to what extent is the trial court's remand order that expert testimony was required, to what extent is that law of the case? It's not law of the case because it would have to be a decision, first of all, by an appellate court. Well, the trial court is an appellate court in this context. I understand Your Honor's point, but I'm not aware of any case law holding that a circuit court holding is law of the case, even in the administrative review context. And Leone certainly has not argued that, but even if it could potentially be considered an appellate court statement in that context, it's still not law of the case because the first circuit court order is not a final judgment. It wasn't appealable because it was a remand. Exactly.  And there's cases to that effect. The Hooker case, 391 Ill App 3rd at 129. There's the ICPO, I-K-P-O-H case. That's at 321 Illinois App 3rd page 41. So it's certainly not law of the case. And I would add that we always must remember that in a proceeding like this, this appellate court is reviewing the department's final administrative decision, not the circuit court's orders or judgment. Then the third topic that I'd like to get to in a moment would be... Dick, your time may have expired, counsel. Thank you. I apologize. I'll wait for Roboto. Thank you, Justice Dougherty. Mr. Goldberg, on behalf of the appellee, you may proceed. Thank you. May it please the court. And Mr. Rush, I would like to start out by emphasizing a point. And that is that, as the justices pointed out, there wasn't an original order that was ignored. And that was rectified. But I would suggest that bringing forward the expert that they brought, the order said, hey, from the judge, you need to have an expert. It's not a felony where it's an automatic discipline. It's a misdemeanor. I need to hear more about this billing. So we need an expert in coding and in compliance. But what the department did after two separate remands, they finally said, okay, fine, we'll have an expert. But what they brought was an expert that was... And he's a fine doctor and a fine chiropractor and had been practicing for quite some time. He was a former member of the licensing board. But he was not an expert in coding and compliance. That was found by the ALJ. So it's just another way of saying, okay, fine, we'll bring an expert, but it's just going to be a chiropractor that really has no bearing and ability to testify about the issue. Counselor, may I ask, I think the record shows that by agreement, your client presented his case first. That's correct. Your client provided the testimony of two experts who, in varying degrees, acknowledged that if the services were billed without any supervision, that that would be a violation. Correct. So then it becomes a factual question, whether the finder of fact credits Dr. Leone's current testimony that, no, there was staff supervision, or whether it credits what's in his stipulation. At this point, we really don't need expert testimony anymore, do we? Well, Judge, you do need expert testimony. Why? Your client's established the expert question. You need expert testimony for two reasons. One, because there's no way to know what the punishment should be. Once again, in the act, it says you are automatically disciplined for a felony. Stop. You would still need an expert, in my opinion, to testify about the level of the punishment. But here, a misdemeanor, it's not even the basis for a suspension. So number one, you need it to determine what the discipline is. Did the trial court say that's why you needed an expert to determine punishment? No, no. But that's my argument. But to get to the point that you're making, the testimony from Dr. Leone and the agreement was made part of the record is that he went from a felony in federal court to a misdemeanor for $150 worth of billing to Medicare that was never even paid. He had no input into what the plea agreement was. Right, but you're saying the finder of fact should not have credited that evidence, but it found that to be more credible than his testimony. That's a factual dispute. We don't need an expert to help us with that. I don't know that the credibility determination was won between the plea agreement and Dr. Leone. It's a prior inconsistent statement that undercuts what Dr. Leone's testimony was. Also, isn't Dr. Leone's guilty plea a judicial admission? It is. So then, and you mentioned a misdemeanor, it's a guilty plea in a criminal case. So the underlying basis is now accepted as the facts in this case. Isn't that correct? That's correct. Yes. And by the way, with regard to the trial court saying that the department need to come up with an expert and explain all this, none of the trial court's thoughts or musings are binding upon us in any way, are they? No, they're not. So why should we need to have an expert, as Mr. Staudt was talking about, explaining what happened in this case? And not only that, if I understand correctly, the experts you called said they'd make a different finding if Dr. Leone's admissions in the plea agreement were true. Well, see, the experts can't make that call. It's a judicial admission, so they are true. So the conditional sentence about what your expert said should be disregarded. No, no. And this is an important point for all doctors that come before the department. The allegations of taking the plea agreement as true, which we have to do in this case, it's still not a per se violation of the Medical Practice Act. It in and of itself is an allegation, because you could comb through the Medical Practice Act, and pleading guilty to a misdemeanor does not form the basis. It's not the plea, it's the stipulation. Your client's stipulations, he stipulated to facts that his experts said would be a violation. But the stipulations themselves are not enough to discipline a doctor. And they were answering a hypothetical question. But the problem in this case is that it emanated from Blue Cross Blue Shield. And you can see from the sentencing and the plea agreement that he agreed to pay some 40-some thousand dollars back to Blue Cross Blue Shield, not one dime to the government. Because once the government realized that just because Blue Cross Blue Shield did not feel that they should pay Dr. Leone based on their own internal guidelines. Once they looked at the Illinois law and realized that he's not violating the law by having someone else supervise someone doing physical therapy or him doing it. But the stipulation doesn't say he was having somebody else supervise. It said they were unsupervised. There's no doubt that I can't argue against what the plea agreement was, correct. Right. So, I mean, that's part of at least the facts in the case. Right. He may have different alternative facts, as they say. But it was up to the finder of fact to decide which to credit. I think it's, I don't think it's that simple. I think that the department's position is that's what's in the plea agreement. And that's what we're going to take as true. But... Pausing right there. What's wrong with that? It's just as Leone points out. We're not talking about the plea agreement. We're talking about the stipulation of facts underlying it. Aren't we supposed to accept that as true? You are. But there is a question about what supervision means. And for, so they have to, the department has to take it as it lies. Right. It says there was no supervision. But we brought experts to say that the term supervision in that area is a term of art. It doesn't just mean whatever a lawyer says it means. So they're talking about the difference between direct supervision and having someone else do it. We're bringing an expert so that the trial court judge and the appellate court can understand about supervision. Okay. Here's what it says. Patients preferred all physical therapy treatment on their own without any supervision or direct one-on-one contact with either Dr. Leone or any other employee. That's just inconsistent with what his testimony is or was at the hearing. Because the experts say that he does not have to be in the room. Any other employee. And his employee was in a room. This is also why our expert went and looked at the facility and their expert did not. That's the prior sentence. The sentence that I referred you to says they performed it on their own without any supervision from either the doctor or his employee. Maybe he could have convinced them that that's inaccurate. But if he didn't, why would we disagree with the Finder effect? Because of the experts testifying. Because they did not have an expert that can explain what supervision means in the CPT code. Your expert did. Our expert did. Correct. Yeah, and that you went first. It was all there for them to base it on. They may not have needed to call the expert because they could rely on your experts testimony. Regarding one of your experts, wasn't it? Witness. I pronounce his name correctly. Fuchi Nari. And wasn't it he who said that. Regarding how. Dr. Leone. Didn't violate or didn't bill. Bill didn't conformance with code 9711. Didn't he acknowledge you would make different findings if Dr. Leone's admissions and the plea agreement were true. He did say that you're correct. Given that. That. The department and we have to accept those admissions as true. Doesn't that substantially cause a discounting of. Dr. Testimony. I mean, I don't think his testimony can be discounted because he's an expert and I think he's well qualified and he saw the office and he went through the records and he's an expert. I may not be clear here. I understand all that. But he said, if. Dr. Leone's the base of Dr. Leone's. Plea agreement were true. There's a penny would be different. We know the basis of that is true and has to be considered as true. Why doesn't that then diminish. Dr. The weight of his testimony to perhaps nothing. Because Dr. And our other expert are testifying about. The art of supervision when it comes to billing and a chiropractor who's performing chiropractic services on someone and supervising someone on a treadmill or on an on a on a exercise ball. And the, it does not have to be, it doesn't the way he testified. It doesn't even have to be constant. I mean, he could go in, but it does have to be. Yes, and he stipulated that it wasn't. No, the, he, he answered a hypothetical and. No, your client stipulated that it wasn't. In the federal proceedings, he said there was no 1. No supervision from anyone, either him or staff. I mean, isn't doesn't that just wrap it up. No, because the word supervision, just like sometimes the word investigation and a whole host of other words had different meanings. Other than what we think of it in law and that's why we needed an expert. That's why three separate judges in the courts below said we needed an expert. Did you were you trial counsel on these proceedings for Dr. I was. Did you ask Dr. For an explanation clarification of what did he mean when he said he would make different findings if Dr. Admissions of the agreement were true. I may I may or may not have I don't remember. I can't remember that but but I think to me that if he says the true if it were true of his findings would be different. And they have to be accepted as true maybe as a layman and legal terms, he doesn't understand judicial missions. But it seems to me that entirely undercuts his testimony council and you have to understand that yet you You're now arguing it doesn't mean what it says or what I'm suggesting is how the testimony should be interpreted as just one of those. But at the time you didn't seek any further clarification. I'll speak to the fact that you're stuck with this response. No, I mean, I don't remember if I asked that specific question. He was redirected and I we had hours and hours of testimony. I'm about what supervision meant and He's explaining what's allowable, which is beyond the four corners of the plea agreement. The plea agreement is taken as true, but that does that that does not define supervision. The way a chiropractor does the way an expert does and that's that's what now. If if Dietzen was a compliance expert and I'm a billing expert and a coding expert and they talked about supervision and he said, look, there's no I don't care what you say. There's no definition of supervision. There's nothing you could say. I don't care if you look at that building five different ways in those rooms. There's no possibility then that would be different, but they didn't have that. You have to ask, why didn't they bring an expert to make that simple statement because they didn't and they had three separate tries to do it. So, What I'd also like to to focus on the discipline because we cite Kaifin and Kaifin was a Where a psychiatrist that had an inappropriate relationship with a 19 year old suicidal patient and underage supplier with marijuana and alcohol and the appellate court said that a six month suspension would be appropriate. I'd also like to know to that. So, to the extent that we're talking about punishment. I think it is analogous situation to criminal cases and the law is clear that the defendant is arguing that the sentence imposed in His armed robbery case was excessive that it's simply not relevant and we're not going to be concerning ourselves with what other defendants and other armed robbery cases may have received. Why is that concept not applicable here as well. Why do we care what happened in other cases where We don't know the circumstances. We don't know what happened, other than it was a different sort of discipline. Why does it matter. Well, it matters because these doctors are being disciplined under the same act under the same paragraph and we know the facts because the appellate court lays them out for us. Well, the defendant in the criminal case and armed robbery is being disciplined under the same criminal statute carries a six to 30 year sentencing range. He was convicted. But there is case law in the administrative Field that says that the discipline of other doctors should be relevant. So, so, and the As the Illinois Supreme Court ever said that I don't think the Illinois Supreme Court has said that, but Well, the nice thing about the appellate court is we don't have to follow other appellate court decisions, unless they're sound. Why is that a sound holding It's a sound holding because the What is our standard of review as we review whether or not the sanction in this case was appropriate. I mean, it's it's mixed fact and law. Right. I mean, so Use of discretion. Yes. Is it an abuse of discretion. I think it is an abuse of discretion. Okay, so we would have to conclude that no reasonable person, the position of the director or the department would take this action. Correct to discipline a doctor for a misdemeanor. When one judge issued an order saying a probation would be appropriate and that order was specifically Ignored and then in another case where By the way, pausing right there. Was that an appropriate thing for the trial judge to do. Yes. Why What's the authority to suggest that on remand to The judge has complete authority on administrative review. He didn't impose the sentence, but he the judge for the judge to make that recommendation. Yes, it would be different if he if he says I hereby sentence you to probation, which they don't have the authority to do, but to make that recommendation. Yes. And that was what the 3rd judge that reversed it. That's what the 3rd judge did as well. Your time is almost up. I'll give you another few seconds to finish up with whatever you want to say. No, I'm fine. Thank you. Okay, well, thank you. Counsel Mr. Rush and rebuttal. Mr. Rush, I hope you don't mind if I ask you to address the stipulation would have been a judicial admission in the federal case in which it was entered. Is that right? We have not taken that position, but Mr. Goldberg just conceded it. Well, you have competing concessions because I think below you conceded that it was an evidentiary admission because it wasn't an admission made in this case. That's that's always the argument that we made, and I don't think it was necessarily because the admission wasn't made in this case. I think it was because here in the courts, we defend agencies decisions on the grounds that agencies make them. And it was clear that the ALJ weighed the credibility of Leone's testimony recanting recanting his stipulated facts. But isn't that the rule that a judicial admission is binding in the case? It's it's made in, but to the extent it's used as evidence in another case, then it is an evidentiary admission. Your honor to I apologize, but to my best understanding, that's not the rule to my best understanding. It has to do with some other factors. This is actually discussed in detail in a U.S. district court opinion discussing Illinois law, which we cite in a footnote in our opening brief. And I think that it could be possible that since some of the facts stipulated in the federal court were not absolutely essential to the federal conviction that that might ordinarily deprive them of judicial admission status. And that's why that that may that may be possible. But the bottom line is the ALJ weighted. And so that's why we treated it that way. But we also have right here today, Mr. Goldberg's concession that it's a binding judicial admission. Either way, we have to pick whose concession we're going to accept. Well, that may be so, but either way, there's there's certainly no basis for this court to reverse any of the factual findings. Now, I want to briefly address something outside the record that Mr. Goldberg mentioned. He said this emanated from Blue Cross Blue Shield. There's nothing. There's no evidence in the record to support that. Now, if we look at judicially noticeable matters, we can look at the sentencing memos that were filed in the federal court proceeding, and they specifically indicate that this matter arose from patient complaints and complaints from others. Mr. Goldberg also mentioned that there's some dispute about internal guidelines for payment. We addressed this in our opening brief. It's very clear that nothing in this case is about different guidelines for different insurance payors with this code. Going back to the facts that are that are on the record, I just want to emphasize, we're not talking about four bills. We're talking about over a thousand. We're not talking about $150 in billing. We're talking about $98,000 of billing. I think close to 100,000, almost 50,000 of which was paid. Then, moving on to the topic of experts, the First Circuit Court decision did not have the benefit of the Jimenez decision. Jimenez makes it very clear that no expert is required here. That is in line with past case law about when an expert is required, cases like Farnsworth, which Leonie cited. In fact, you can go through the Medical Practice Act, as we do in our briefing, and show how the admitted conduct does violate the Act, because an ordinary layperson can understand that it's unethical and professional, because he did willfully make false records and reports, because he did obtain fees by misrepresentation. So on and so forth, six different counts. Turning also on the subject of experts and supervision, I don't recall seeing anything in the record, and they don't cite it in their brief that it's okay if the supervision isn't constant. But that's beside the point. As the Court is aware, Leonie admitted to no supervision, and there's no dispute among the experts about what that means. Thank you, Counselor. You're timed up. I will thank both Counsel for your presentations this afternoon, and the Court will take this matter under advisement, render it opinion in due course, and stand in recess.